## NEW YORK BAY CEMETERY COMPANY

### v.

### JOHN W. BUCKMASTER et al.

Act March 5th, 1850 (*Pub. Laws 1850 p. 194*), incorporating a cemetery company, by section 2 declared that the corporation should be composed only of persons who were or should be owners of lots in the cemetery; empowered it to purchase land owned by the corporators, and by them already laid out for a cemetery; and provided that it should hold the land for the following uses : (1) The corporators, their successors or assigns, might dispose of the lots, and take the proceeds " to their only proper use and behoof," and might erect such accommodations as they should deem suitable; (2) such lots should be conveyed to the purchasers in fee, to be occupied only as burial places, with use of walks &c., subject to rules of the association; (3) the care and management of the cemetery should be confided to the corporators and their successors, who should be chosen at the annual election from the lot-owners, each lot-owner to have one vote for each lot owned, with authority to employ officers and agents, and cause the grounds to be kept in good order.  Annexed to and made a part of the deed conveying the land to the company were its by-laws, providing that, the corporators being entitled to compensation for the land, the proceeds of the sales of lots should belong to them, their heirs and assigns; that the proceeds should be divided into a certain number of shares, for which certificates should issue; that all debts and expenses, salaries of officers &c, should be paid before any part should be divided among the shareholders.—*Held*, that

the proceeds of the lots, subject to the lots' proportional share of the expenses, went to the corporators individually, and not to the corporation, which was to be composed of the owners of lots purchased from the company; and therefore parties to whom the corporators, by deed of the corporation, conveyed all the unsold lots, in fulfillment of an agreement between the grantees and the corporators that the grantees should have all the interest of the corporators in consideration of assuming all the company's debts, do not hold in trust for the corporation, but are entitled to the proceeds of sale to individual lot-holders, subject to the proportional expense.

On final hearing on pleadings and proofs.

*Messrs. Babbitt & Lawrence,* for the complainant.

*Messrs. Talcott & Meyer* and *Mr. Everett P. Wheeler* (of New York), for the defendants.

PITNEY, V. C.

The bill is filed by the New York Bay Cemetery Company, a corporation organized under a special act of the legislature, approved March 5th, 1850, and it seeks to restrain an action of ejectment. The defendants, plaintiffs in the ejectment, are a portion of the devisees of Thomas H. Buckmaster, deceased, who claim title to some two thousand and one hundred burial lots in the cemetery enclosure of the complainant, by virtue of divers conveyances made by the cemetery company in the fall of 1853, which conveyances purported to convey in the aggregate thirty thousand burial lots in the cemetery—

"in common and undivided in all the lands as the same are laid out on the registered map or plan of the said cemetery, and now remaining unsold and belonging to said company, said grounds and cemetery containing in all remaining unsold at this time thirty thousand lots."

The title to nine hundred and sixty-nine of these lots, derived through these conveyances to Thomas H. Buckmaster, were involved in the case of *The New York Bay Cemetery Company* v. *Clara Buckmaster, 20 Vr. 449.*

Clara Buckmaster is not a party to this suit, and the lots here involved do not include the nine hundred and sixty-nine which were the subject of judicial action in the case just cited.

The gravamen of the bill is that no consideration was paid by Thomas H. Buckmaster to the complainant for the conveyances just mentioned, and that he was an officer of the company at the time, and that the result of the conveyances was to make Buckmaster a trustee for the company, and it sets up circumstances which it alleges render the conveyance so made void in equity as against the complainant.

During the hearing, the complainant asked and obtained leave to amend the bill by alleging that if any consideration was paid by Buckmaster to the company, it was by way of loan, and that the conveyance to him was by way of mortgage, and that the amount so paid has been repaid by a sale of a portion of the mortgaged premises.

The answer sets up a consideration and denies that anything which has occurred entitles the complainant to turn the absolute conveyances into a mortgage, and pleads the statute of limitations.

There is a cross-bill which alleges that the complainant has sold to individual purchasers for the purposes of sepulture, and received payment for several lots belonging to defendants, and prays an account for money so received, and that defendants' title to the unsold lots may be established by decree of this court.

An answer was filed to the cross-bill, and the cause brought to hearing.

[The statement of the facts of the case is here omitted.]

The complainant rests its claim for relief on two grounds— *first,* that it was beyond the power of the complainant to make an absolute conveyance of all its property in the manner in which it was done, and that if the legal title passed, as it must be held to have done under the decision in the case of *Clara Buckmaster,* that it was, and is, held in trust for the complainant; and, *second,* if any consideration was paid by Buckmaster to the company for the conveyance, the result was to make him a mortgagee only, and that the proof is abundant to show that he has been paid all that he advanced.

I think neither of these positions tenable.   Both are founded on what seems to me to be a plain misconception of the situation and of the rights of the parties resulting from the peculiar provisions of the act of incorporation and of the so-called by-laws annexed to the deed of conveyance from Broomhead to the corporation.   The corporators named in the act occupied a peculiar position.   They were—*first*, corporators simply, such as were always inserted in the old special acts of incorporation entrusted by the legislature with power of organization ; *second*, they were managers of the affairs of the corporation until superseded by an election held under the provisions of the third section ; and, then, *third*, they were proprietors of the land to be conveyed, and, by the first subdivision of the second section, were entitled to take to " their only proper use and behoof " the proceeds of the sale, subject, however, as I think, to the duty of devoting sufficient of such proceeds to the purpose of completing the work of putting the grounds in order, as provided in the third subdivision of the second section.

Then, again, by the terms of the deed of conveyance, they expressly reserved to themselves the right to take all the proceeds of the sale of all the lots to themselves, subject to certain charges therein specified, and they fixed a price below which none should be sold.

Complainant argued that those corporators were themselves the corporation, because the grant, in the charter, to them of the right to take the proceeds of the sale " to their only proper use and behoof" was to them and their successors and assigns, and, therefore, the statutory reservation of the proceeds to the complainants was in effect a reservation to the corporation itself. But the language relied on must be construed in connection with the sections which declared that the corporation should be composed only of persons who should be owners of lots, and in view of the fact that the persons named were the proprietors of the land and were entitled to compensation for it upon its conveyance to the corporation.

If the individual lot-owners had combined, at the end of the first year, to elect new trustees, they could not thereby have

New York Bay Cemetery Co. *v.* Buckmaster.

divested the right of the proprietors to the proceeds of the sales,. and by the terms of the by-laws annexed to the deed from Broomhead to the corporation those proprietors would still have had' the right to substantially control the corporation and to demand all the proceeds of the sales of the lots.

Coming to the several deeds of conveyance made by the corporation in September, 1853, to Buckmaster and the other grantees above mentioned, it seems to me that those deeds were simply and no more than a means adopted by the proprietors by which they assigned to those grantees all the proceeds of the sales of those lots precisely the same as if each of the nine hundred and sixty shares of stock issued to the original proprietors. had been transferred to them. This view is in consonance with the verbiage found in the deeds where the lots are not located. and described by numbers or other description but are designated as being "in common and undivided and now remaining unsold" &c., and with the subsequent conduct of Buckmaster in. making title to actual purchasers by deed executed by the company.

In addition to transferring the right to these proceeds of actual sales, the intention of the parties undoubtedly was to give Buckmaster and the other grantees the voting power based upon the ownership of the lots, and through that voting power the ability to control the corporation until the majority of them had been sold to outsiders. Whether the deeds actually vested the grantees. with any such voting power it is not necessary to decide. But that they did vest them with the right to take the proceeds of the sales I can have no doubt.

This consideration also disposes of the question whether the conveyances should be considered as a mere mortgage to secure Buckmaster for moneys advanced with a reversion in favor of the corporation. This is a matter in which the corporation has no interest, because it is not entitled to the proceeds of the sale. The only parties who could find fault with the transactions of Buckmaster in that respect were the original proprietors or the holders of the script which, it is said, was issued to represent.

their several interests in the enterprise. How Buckmaster dealt with those proceeds is no affair of the complainant.

Another point made by the complainant in favor of the trust or mortgage aspect of the transaction is that Buckmaster and his successors always made conveyances in the name of the company. But, in my judgment, as already stated, that was entirely consistent with the actual rights of the parties, and with the view which I have taken of the effect of the conveyance to him and the others, viz., that it merely gave them a right to take the proceeds of the sales.

There remains to be considered the question whether the corporation proper, consisting of the actual lot-owners—those who bought in good faith for the purpose of sepulture—have a right to have a part of the proceeds of the sales of the Buckmaster lots kept back for the purpose of paying the running expenses of the corporation, and of keeping the fences, avenues and walks of the cemetery in proper condition.

The second subdivision of the second section of the charter provides that the respective purchasers of sublots shall have the title in fee simple " with the uses and privileges of the several avenues, walks and chapels in said cemetery ; " and the third subdivision declares that the original corporators and, after them, their successors, who shall be chosen by the lot-owners as trustees, shall have the exclusive superintendence of the grounds, with power to cause the grounds, graves, walks and improvements to be kept in good order. And by the fifth section it is declared—

"That it shall be the duty of said company to cause said cemetery to be enclosed by a good, substantial, neat enclosure, and at all times to keep such enclosure in good order and repair; and to keep and maintain the grounds in a cleanly and neat condition, under the penalty of one hundred dollars for every thirty days said company shall fail to comply with either of the requirements of this section."

And by the so-called by-laws annexed to the deed from Broomhead to the corporation, it is declared that—

"all debts, incumbrances and expenses of said company and improvements of the grounds, erection of edifices and *salaries of officers* shall be paid out of the

New York Bay Cemetery Co. *v.* Buckmaster.

aforesaid proceeds and income before any part thereof shall be divided among the shareholders [proprietors]."

And again :

"The expenditures contemplated by the plans of the company shall be carried out by the shareholders and under their management and direction, as far as the said proceeds and income realized by the company will justify."

Upon a careful consideration of this language, I have come to the conclusion that the corporation proper, composed of the owners of lots bought for actual burial purposes, have a lien upon the proceeds of the sale of the Buckmaster lots for the purpose of paying the salaries of the officers and other general expenses incurred in maintaining the fences, grounds, walks and paths of the cemetery proper. It seems to me it would be running counter to the very spirit of the scheme to hold otherwise. At the same time, I think that the proceeds of the sale of the lots in question should not bear the whole burden of the expenditure just mentioned, but only their proper proportion of the same, such proportion to be ascertained by dividing the actual expenses among the whole number of lots in the cemetery, and imposing upon the Buckmaster lots an equal share with the others.

The result is, that the defendants are entitled, under their cross-bill, to a decree declaring that they are entitled to the proceeds of the sales heretofore or hereafter to be made of all the so-called Buckmaster lots, subject to the right on the part of the complainant to deduct therefrom their fair proportion of the costs of maintaining the cemetery as above stated ; and the defendants are entitled to an account of the proceeds of the sales made by the complainant since the Buckmasters were ousted from the management of the corporation, and to an account of the expenses of managing the corporation and maintaining the fences, grounds, walks and paths of the cemetery in proper order. And to this end there should be an inquiry as to the whole number of lots belonging to the Buckmasters at the time that the corporation proper took possession in 1878, and the number of such lots sold each year by it since, and the amount

·received from such sales; also, an inquiry as to the whole number of lots within the present cemetery enclosure, and an apportionment should be made up each year of the expenses aforesaid upon the whole number of lots in the cemetery showing the ·share which properly fell upon the Buckmaster lots.

The action of ejectment may go to judgment, but execution ·on it must be enjoined unless the complainant shall fail to pay :any balance which may at any time be found to be due from it ·to the defendants.